IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**vs.**                                                  **NO.  CR 04-2524 RB**

**EVERETT CHARLES BRAKEMAN,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on four of Defendant's ("Brakeman") motions: i) a motion to suppress evidence, filed on February 10, 2005; ii) a motion to suppress evidence, filed on April 29, 2005; iii) a motion to strike surplusage from the Indictment, filed on April 29, 2005; and iv) a motion to dismiss counts 2, 4, and 6 of the Indictment, filed on April 29, 2005. The Court held a motions hearing on May 23, 2005. For the following reasons, I will DENY all of Brakeman's motions.

**I. The Superseding Indictment.**

The second Superseding Indictment, filed on April 6, 2005, charges Brakeman as follows:

| | |
|---|---|
| Count 1 | Felon in possession of firearms and ammunition on May 31, 2004; |
| Count 2 | Drug user in possession of firearms and ammunition on May 31, 2004; |
| Count 3 | Felon in possession of firearms and ammunition on June 4, 2004; |
| Count 4 | Drug user in possession of firearms and ammunition on June 4, 2004; |
| Count 5 | Felon in possession of firearms and ammunition on September 15, 2004; |
| Count 6 | Drug user in possession of firearms and ammunition on September 15, 2004; |

| | |
|---|---|
| Count 7 | Possession with intent to distribute less than 5 grams of methamphetamine on September 15, 2004; and |
| Count 8 | Carrying a firearm and ammunition during and in relation to a drug trafficking crime on September 15, 2004. |

**II. Analysis.**

    **A. Motion to suppress, February 10, 2005.**

Brakeman seeks to suppress drugs, drug paraphranelia, firearms, and ammunition that were recovered from his residence, RV, and automobile pursuant to the execution of a search warrant on May 31, 2004.  On May 29, 2004, Chaves County Sheriff's Deputy Marcos Franco responded to a loud party call and observed Danny Calloway running from Brakeman's residence.  In an interview with Deputy Franco that same day, Calloway told Deputy Franco that Brakeman was a former friend of his who had shot at him in a dispute over drugs Brakeman believed Calloway had been stealing from him.  Calloway told Deputy Franco that he had gone to the "shop" at 205 Monksdale, where Brakeman resided, to speak with Brakeman and that the shop was where he was running from when Deputy Franco encountered him.  The next day, on May 30th, Deputy Franco consulted with a district attorney on the affidavit he prepared and then obtained a warrant from State District Judge William P. Lynch.  Deputy Franco and other officers executed the search warrant on May 31, 2004.

    The affidavit for the search warrant, provided by Deputy Franco, indicated that:

[T]he property is located at 205 Monksdale in Roswell, New Mexico, Chaves County. The property is described as a white mobile home with red trim, single-wide. The front door faces south and the back door faces the north. The roof is constructed with metal, gray in color and is flat. The property has a chain link fence with white security lining. The address is displayed on a black metal box in the front yard, south side of the property as 205 in white letters, also has the name of Higgins, also in white letters. A shed, white in color, is located on the northwest side of the residence.

The affidavit could be read as describing Mr. David Higgins' property more accurately than it described Brakeman's residence and RV. Although both Mr. Higgins' residence and Brakeman's shop were white living quarters, with a red stripe, a gray roof, and both were surrounded by white outbuildings, the black mailbox with "Higgins" in white letters was located directly in front of Mr. Higgins' property. Brakeman argues, therefore, that the search warrant failed to describe the person or the place to be searched and the items to be seized with particularity.

I find, however, that Deputy Franco chose to list 205 Monksdale as Brakeman's address in an effort to more specifically describe the location that was to be searched. The police department's records indicated multiple addresses for Brakeman. One, 4242 South Main, was the address listed at the entrance to the trailer park in which Brakeman's residence was located. The second address was 205 Monksdale, which was displayed immediately in front of the shop in which Brakeman resided. Brakeman leased the shop from a Mr. Higgins, who lived right next to Brakeman, also at 205 Monksdale.

Moreover, Chaves County law enforcement knew Brakeman from previous encounters as someone who was involved with drugs and often armed. Brakeman's residence was pointed out to new officers as a trouble spot during their field training. Deputy Franco was shown Brakeman's residence during his field training with Chaves County and, therefore, had personal knowledge of where Brakeman resided. Deputy Franco also observed Calloway running from the area where Brakeman lived. Calloway told Deputy Franco where Brakeman's shop/residence was located and that Brakeman had shot at him in a dispute over drugs. Deputy Franco accompanied other officers in executing the warrant at Brakeman's property.

In executing the warrant, officers proceeded directly to Brakeman's property. They never

searched any of the buildings associated with Mr. Higgins. Because officers never searched his property, Mr. Higgins' Fourth Amendment rights were never implicated. During the search, Brakeman acknowledged that he resided in the shop located next to Mr. Higgins' property, at 205 Monksdale. The executing officers searched the property they had intended to search--the shop at 205 Monksdale in which Brakeman resided, the RV connected to the shop, and the El Camino parked near the shop.

The Tenth Circuit has held that the "test for determining the adequacy of the description of the location to be searched is whether the description is sufficient 'to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched.'" *United States v. Lora-Solano*, 330 F.3d 1288, 1293 (10th Cir. 2003) (internal citations omitted). In addition, "[a] technically wrong address does not invalidate a warrant if it otherwise describes the premises with sufficient particularity so that the police can ascertain and identify the place to be searched." *Id.*

The requisite specificity of the description depends on the facts of each case. *United States v. Williamson*, 1 F.3d 1134, 1136 (10th Cir. 1993). The Court can consider the officer's personal knowledge of the property in determining the validity of a warrant. *See, e.g., United States v. Sturmoski*, 971 F.2d 452, 458 (10th Cir. 1992). In other words, an officer's knowledge may cure "a technically inaccurate warrant . . . provided that the officer's knowledge is not the *sole* source of the location." *Lora-Solano*, 330 F.3d at 1294 (emphasis in original).

In this case, Deputy Franco's personal knowledge of Brakeman's property was not the "sole source of the location" in obtaining the search warrant. Danny Calloway told Deputy Franco that Brakeman had shot at him and pointed out where Brakeman's property was located. In addition,

4

Brakeman's property was known as a trouble spot to the Chaves County Police Department. Deputy Franco also had personal knowledge of the location of Brakeman's property, a factor the Court can consider in determining the validity of the search warrant. *Sturmoski*, 971 F.2d at 458. Deputy Franco's affidavit attached to the warrant described the property to be searched as "located at 205 Monksdale in Roswell, New Mexico, Chaves County." This information directed the executing officers to Brakeman's property.

In addition, the facts indicate that Deputy Franco intended to search Brakeman's property. Although the affidavit could be interpreted as describing Mr. Higgins' property rather than Brakeman's, the officers executed the search warrant at Brakeman's property. The Chaves County records listed two addresses for Brakeman and Deputy Franco selected the more specific address of 205 Monksdale so that "the executing officer [could] locate and identify it with reasonable effort." *Williamson*, 1 F.3d at 1135-36. I find that in executing the warrant, the officers did no harm to the Fourth Amendment rights of either Brakeman or Mr. Higgins, and that the warrant is valid.

Furthermore, "[a] search warrant authorizing a search of a certain premises generally includes any vehicles located within its curtilage if the objects of the search might be located in those vehicles." *Sturmoski*, 971 F.2d at 458 (holding that the warrant authorizing the search of a residence described with sufficient particularity a horse trailer within the curtilage of the premises connected to the residence by a walking path). The Tenth Circuit has held that "[t]he detached garage, shed, and office, are the type of buildings which are ordinarily part of residential property" so that a warrant authorizing the search of a residence permits the search of the outbuildings within the curtilage of the residence. *United States v. Earls*, 42 F.3d 1321, 1327 (10th Cir. 1994). The search of Brakeman's RV and automobile, therefore, was also valid.

5

The warrant described the premises to be searched with sufficient particularity to allow the executing officers to locate it with reasonable effort. The shop/residence *was* located at 205 Monksdale and along with the El Camino, the RV was included within the curtilage of the residence and was, therefore, within the scope of the warrant.

Even if the warrant did not describe the place to be searched with particularity, the good faith exception outlined in *United States v. Leon* applies. *See Earls*, 42 F.3d at 1327. The affidavit provided to the magistrate and reflected in the warrant "was clearly not an instance of 'a police officer [making] false statements in an affidavit . . . knowingly or with reckless disregard for the truth.'" *Lora-Solano*, 330 F.3d at 1295. Deputy Franco intended to search Brakeman's property and received the approval of a district attorney before submitting the affidavit to Judge Lynch. The warrant, therefore, was "not so lacking in indicia of probable cause that the executing officer should have known the search was illegal despite the state magistrate's authorization." *Id.* (internal citations omitted). The Court, therefore, will DENY Brakeman's motion to suppress.

**B. Motion to suppress, April 29, 2005.**

On September 15, 2004, Chaves County Sheriff's Deputy Daniel Ornelas and Deputy George Wallner were on patrol in a marked car. Deputy Ornelas was driving. Although it was Deputy Wallner's first day as a Chaves County officer, he had twenty-five years of law enforcement experience in California.

Deputy Ornelas observed a recreational vehicle (RV) without a license plate operating on the roadway. Deputy Ornelas recognized its driver as Brakeman, whom he knew to be a convicted felon who was frequently armed. Deputy Ornelas executed an abrupt turn that alarmed Deputy Wallner. Deputy Ornelas called for back up shortly after the stop. Deputy Wallner believed that calling for

6

back up was an unusual step for a routine traffic stop.

Brakeman pulled over into the parking lot of Pecos Valley Sales. As the deputies followed behind the RV, a red pickup truck cut in front of the deputies' car and stopped next to the RV. The pickup truck held three passengers in the cab and one passenger in the bed of the truck.

Deputy Ornelas got out of the patrol car and commanded Brakeman to get out of the RV. Brakeman did not immediately comply. Deputy Wallner approached the pickup truck and noticed that the ignition had been "punched," that is, it had been modified to operate without a key. Based on the state of the ignition, Deputy Wallner suspected that the truck was stolen. Deputy Wallner also noticed that the truck did not have a license plate.

Because the occupants of the pickup appeared restless and nervous, Deputy Ornelas told them to get out of the pickup. Deputy Ornelas asked for the license of the driver of the pickup and tried to determine who owned the pickup and the RV. The passengers of the pickup claimed that they had no idea who owned the pickup, and its driver said it belonged to a friend of hers.

At this point, other officers had arrived to assist Deputy Ornelas and Deputy Wallner. Meanwhile, Brakeman, after some delay, exited the RV. Deputy Wallner directed him away from the occupants of the red pickup. Brakeman was not immediately compliant with Deputy Wallner's directives. Brakeman produced his driver's license. Deputy Wallner asked Brakeman if he was carrying any weapons, drugs, or needles. Brakeman said he had a knife in his pocket, but he did not know which pocket. Deputy Wallner patted down Brakeman's pockets and contacted what felt like a knife from Brakeman's pocket. Deputy Wallner asked Brakeman if the object he felt was the knife and Brakeman said he did not know. In fact, upon retrieval, the object was a case approximately six inches long and one inch wide. Deputy Wallner asked Brakeman if the knife was in the case, and

Brakeman replied that it was a glasses case, which was non-responsive to the deputy's question. Deputy Wallner opened the case, where he found several plastic baggies of suspected methamphetamine. Brakeman was placed under arrest.

Brakeman's RV and the red pickup were towed, and an inventory inspection was conducted of the two vehicles. In the RV, officers found a 9 mm HiPoint automatic hand gun under the driver's seat. In the back of the red pickup, the officers found a syringe. They also found methamphetamine on one of the truck's occupants.

When assessing the reasonableness of an investigative detention, courts make a dual inquiry: (1) 'whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry v. Ohio*, 392 U.S. 1, 20 (1968). A traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation. *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). The initial stop was valid because the deputies observed that the RV was being operated without a license plate.

Brakeman argues that Deputy Wallner exceeded the scope of the stop when he opened the glasses case. Brakeman claims that Wallner violated the Fourth Amendment by opening the case without Brakeman's consent or a warrant.

When police officers have a reasonable suspicion based on specific and articulable facts that a properly detained driver may be dangerous and "may gain immediate control of weapons, they may conduct a weapons search of the driver's person and the passenger compartment of the vehicle." *United States v. Leyva-Serrano*, 127 F.3d 1280, 1283 (10th Cir. 1997). Protective searches are valid if the officer conducting the search has a reasonable suspicion that the suspect is dangerous and the

8

search is directed only to locations that may contain a weapon and to which the suspect may have access. *United States v. Palmer*, 360 F.3d 1243, 1248 (10th Cir. 2004). The fact that the detainee is under the control of officers does not eliminate the risk that he will gain access to a weapon and the time period during which the detainee may gain immediate control is the entire period from the initial stop to the detainee's departure. *Palmer*, 360 F.3d at 1246 (citing *Michigan v. Long*, 463 U.S. 1032, 1051-52 (1983)).

The pertinent moment to assess the risk of the suspect's gaining immediate control of a weapon is just before the officer takes protective measures. *Palmer*, 360 F.3d at 1248. "Otherwise, we might create a perverse incentive for an arresting officer to prolong the period during which the arrestee is kept in an area where he could pose a danger to the officer." *Id*. (citing *United States v. Christian*, 187 F.3d 663, 665 (D.C. Cir. 1999)). Thus, the question in this case is whether Deputy Wallner had a reasonable and articulable suspicion sufficient to justify a search of the glasses case at the time he was conducting the protective search.

In this case, Deputy Wallner observed Deputy Ornelas exercise extreme caution in dealing with Brakeman. A reasonable officer would surmise that he should also treat Brakeman with caution. The pickup truck pulled in next to the RV as the deputies were pulling over the RV in a marked police car. A reasonable officer could, reasonably, interpret such behavior as erratic and a potential challenge to the stop of the RV. Deputy Wallner reasonably believed that the pickup was stolen because he observed that the ignition had been "punched." Brakeman told Deputy Wallner that he had a knife on his person, but would not reveal its whereabouts. The glasses case was large enough to conceal a knife. If the knife was in the case, opening the case would have revealed it. If the knife was not in the case, the search needed to continue. It was not unreasonable to believe that Brakeman

9

could gain access to a knife either from the case or from elsewhere on his person since the knife had not yet been found. The facts show that Deputy Wallner had reasonable suspicion that Brakeman was dangerous, Brakeman had access to the glasses case, and that the case could have concealed a weapon. Under the circumstances, Deputy Wallner was justified in opening the case without Brakeman's consent or a warrant. The Court, therefore, will DENY Brakeman's second motion to suppress.

### C. Motion to strike surplusage, April 29, 2005.

In the second Superseding Indictment, the Government has included seven prior felonies as proof of Brakeman's felon status for the three charges of Felon in Possession of Firearm and Ammunition (Counts 1, 3, and 5). Brakeman moves to strike references to more than one felony conviction on the ground that proof of more than one conviction serves no purpose other than to prejudice a jury. Brakeman points out that, if the Government wants to label him as an Armed Career Criminal ("ACC"), they only need to prove three prior convictions for either violent felony or serious drug offenses.

Absent a stipulation, the Government typically proves a defendant's prior conviction by introduction of a "pen packet" that contains certified copies of a defendant's convictions and the sentences he received. A prior felony conviction is an element that has to be proven at trial for the Felon in Possession charges contained in the Indictment. If Brakeman does not want to stipulate to one felony, the government will be permitted to prove one predicate conviction for the offense element at trial. As to the ACC enhancement, the United States will be permitted to allege and prove sentence-enhancing prior convictions at sentencing. The Court will DENY the motion to strike surplusage. Brakeman may file a *motion in limine* before trial to resolve any remaining issues.

**D. Motion to Dismiss Counts 2, 4 and 6, April 29, 2005.**

Brakeman argues that Counts 2, 4, and 6 of the Indictment should be dismissed because he was not an unlawful user of a controlled substance within the meaning of 18 U.S.C. § 922(g)(3). In order to establish the "unlawful user" element, the Government must show that a defendant's drug use was contemporaneous with his firearm possession. *United States v. Bennett*, 329 F.3d 769, 776-77 (10th Cir. 2003).

The Government intends to prove that, on May 31, 2004, searching officers found drug paraphernalia and multiple firearms and ammunition on Brakeman's property; (b) on June 4, 2004, Brakeman was a passenger in a vehicle in which methamphetamine, a gun, and ammunition were recovered; and (c) on September 15, 2004, officers found methamphetamine on Brakeman's person, and a gun under the driver's seat of an RV that Brakeman was driving. If proven, these facts would establish that Brakeman's drug use was contemporaneous with his firearm possession. The Court, therefore, will DENY Brakeman's motion to dismiss. Brakeman may raise the issue through an appropriate motion at the close of the Government's case.

**III. Conclusion.**

All four of Brakeman's motions are hereby DENIED.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**